IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


RONALD P. SLOUGH,

                     Plaintiff,                  Case No. 3:06 CV 2592

    -vs-

                                         <u>MEMORANDUM   OPINION</u>

HON JAMES A. TELB, et al.,

                     Defendant.

KATZ, J.

       This matter is before the Court on Defendants' motion for judgment on the pleadings.

(Doc. 48).  Plaintiff has filed an opposition  (Doc. 49), and Defendants have filed a reply (Doc.

52).

       As discussed herein, Defendants' motion is granted in part and denied in part.  (Doc. 48).

Plaintiff may proceed with Count I against Defendant Telb in his official capacity and against the

following Defendants in their individual capacities: Defendants Luna, Rogers, McBroom,

Walentowski, and Grzechowiak, for unreasonably seizing Plaintiff's property; and Defendants

Luna, Ellis, and Telb for wrongfully interfering with Plaintiff's family relationships.  All other

claims alleged in Count I are dismissed with prejudice.  Counts II – VII are dismissed with

prejudice.  Defendants Atkinson and Perry, and Defendant Board of Lucas County Commissioners

are dismissed as parties.

**I.**      **BACKGROUND**

       In a motion for judgment on the pleadings, the Court treats as true all of Plaintiff's

allegations not inconsistent with the final judicial findings of fact from prior, related litigation.

*See*, *Stychno v. Ohio Edison*, 806 F. Supp. 663, 666 (N.D. Ohio 1992).  This background,

therefore , is not a final adjudication of the facts, but a restatement of Plaintiff's allegations. Plaintiff alleges as follows:

Plaintiff Ron Slough was hired in 1994 as Deputy Sheriff in the Lucas County Sheriff's Office ("LCSO"), Lucas County, Ohio.  Plaintiff served in this capacity until his termination in 2004.  Defendant Telb is the Sheriff of LCSO.  Defendant Board of Commissioners of Lucas County, Ohio is the legislative and executive branch of Lucas County.  All other named Defendants are officers and employees of LCSO.

In July, 2004, LCSO was informed of allegations of domestic violence, spousal and child abuse in Plaintiff's home.  These allegations of domestic violence were made by Defendant Robert Ellis, a deputy sheriff at LCSO.  Defendant Ellis alleged that he had personal knowledge by his witnessing of domestic violence on five separate occasions.  Plaintiff alleges that Defendant Ellis's statements consist of falsehoods, fabrications, and exaggerations.[1]

On or about July 13, 2004, Defendant Andrea Luna, a sergeant at LCSO, contacted Mrs. Slough and asked to meet with Mrs. Slough in person.  They met the next day, July 14, at Mrs. Slough's place of employment, and went to a fast food restaurant where they proceeded to discuss

---

[1] Defendant Ellis claimed to have seen Plaintiff, while drunk, place a loaded gun on a table during a party at Plaintiff's house.  Plaintiff claims that on the night of the alleged party, Plaintiff and his family were in the state of Michigan with friends.  Defendant Ellis claimed that Plaintiff's wife, Julie Slough, told Ellis about a specific incident of domestic violence in which Plaintiff held Mrs. Slough down and poured beer over her head.  Plaintiff claims that not only did no such incident ever occur, but that Mrs. Slough had never made any such statement.  Ellis claimed to have observed Mrs. Slough unable to bowl, and that Mrs. Slough told Ellis that Plaintiff had beaten Mrs. Slough.  Plaintiff claims that Mrs. Slough accidentally burnt her leg on a motorcycle exhaust pipe and that Mrs. Slough had further injured her leg helping on a repair job.  Ellis claimed to have overheard Plaintiff yelling in a rage on a cell phone call to Mrs. Slough while Ellis and Mrs. Slough were attending a music concert with a group.  Plaintiff claims that he was yelling to make himself heard over the loud music.  Ellis claimed that Plaintiff bragged to Ellis about locking his 9 year old daughter in the "pigsty" basement as punishment, forcing her to eat her meals there and go to the bathroom in a bucket.  Plaintiff claims that, although he did ground his daughter to the basement playground, it is a comfortable, finished basement, not a pigsty.  Plaintiff claims that Mrs. Slough did tell Ellis that she thought Plaintiff was having an affair, but had never indicated that she was the victim of domestic violence.  According to Plaintiff, all of Ellis's allegations are false.

2

the allegations of domestic violence.  Luna stated that she knew Plaintiff was having several

sexual affairs, and that Plaintiff had made advances towards her.  Luna told Mrs. Slough that an

anonymous tipster (later learned to be Defendant Ellis) had alleged incidents of domestic violence.

Luna told Mrs. Slough that if Mrs. Slough did not cooperate Plaintiff would lose his job and the

Children Services Bureau would get involved, possibly taking Mrs. Slough's children.  Mrs.

Slough began to "cooperate" and wrote a statement against Plaintiff.  At several points Luna

would grab Mrs. Slough's statement and demand changes or exaggerations.  Mrs. Slough wrote

the statement as directed by Luna.

On that same day, July 14, 2004, Plaintiff was ordered to a meeting with Defendant Jon

Roger and other non-defendants, all of whom had supervisory authority over Plaintiff.  At this

meeting, Plaintiff was informed of a complaint lodged alleging domestic violence.  Plaintiff

voluntarily cooperated with the investigation.  Plaintiff was ordered not to have any contact with

his family while the investigation was underway, to speak with a counselor at the Employee

Assistance Program ("EAP"), and to surrender all of his personal weapons.  Plaintiff agreed to the

first two terms, but not the third.  Plaintiff informed those present that his weapons were locked in

a vault in Plaintiff's home.  Plaintiff agreed to turn over his keys to the vault so that he would not

have access to the weapons during the investigation.  Plaintiff was clear and explicit in his

instruction that none of his personal property was to leave his home.

The following day, July 15, 2004, Luna called Mrs. Slough to inform her that she needed

further information from Mrs. Slough.  Luna also informed Mrs. Slough that Luna and several

other officers were going to remove all weapons from the Slough residence.  When Mrs. Slough

received the phone call, at approximately 9:00 a.m., the other officers were already at the door.

Defendants Roger, Mcbroom, Luna, Walentowski, and Gzechowiak, without a warrant, entered the Slough residence, removed all of Plaintiff's weapons, and took Mrs. Slough to the family court to get Mrs. Slough to file domestic violence charges and file for a civil protective order.  When Mrs. Slough refused to file either action, Luna contacted the Children Services Bureau.

On July 19, 2004, Plaintiff met with Defendant Roger.  Plaintiff was reinstated to duty, reissued his duty weapon, and informed that he could return home.  Plaintiff was informed  that LCSO had determined there were no domestic violence issues they needed to be concerned with, but that they were concerned with the number of weapons that were in the residence.  Defendant Roger told Plaintiff they were going to keep the weapons just to make sure that there were no domestic problems (although Defendant Atkinson later informed Mrs. Slough that Defendant Telb had wanted to keep the weapons to see if Plaintiff and Mrs. Slough were going to get divorced). In August 2004, after a two week investigation, Children Services Bureau found no evidence of domestic violence, a finding that was also independently reached by EAP in September 2004.

Plaintiff attempted several times to recover his weapons from Defendants Roger and Telb. Plaintiff made over two dozen calls, sent two letters, and an official request to have his seized property returned.  Plaintiff filed for replevin in state court on October 17, 2004.  On November 22, 2004, the state court ordered all of Plaintiff's weapons returned, with the exception of two guns and two magazines: a semiautomatic rifle with a 75 round drum magazine, and a 9 mm semiautomatic pistol with a 50 round box magazine.  Defendant Roger testified that the items not returned were then being analyzed by ATF as possibly violating federal weapons laws.  Plaintiff claims that there is no record that ATF ever had those weapons in their possession.

The next day, November 23, 2004, Plaintiff was indicted with two counts of unlawful

4

possession of dangerous ordnance pursuant to Ohio Revised Code §§ 2923.17(A) and 2923.17(D). The indictment was subsequently dismissed as the chief evidence against Plaintiff were the weapons themselves, gathered in an unwarranted search and seizure.

Also on November 23, 2004, Defendant McBroom filed a memo recommending that Plaintiff be terminated.  That same day, Plaintiff received notice that he was to appear in front of Defendant Ken Perry, Chief Deputy Sheriff of LCSO, on November 30.  After the meeting with Defendant Perry, Plaintiff was terminated from his employment for violation of LCSO Employee Rules # 1, Law Violations, and #7, Conduct Unbecoming an Employee.  Plaintiff appealed the decision regarding his termination.  The State Personnel Review Board, the Court of Common Pleas, and the Court of Appeals of the Ohio Sixth District all concluded that Plaintiff had been rightfully terminated, despite the fact that Plaintiff had never been convicted of a crime.  *Slough v. Lucas County Sheriff*, 174 Ohio App. 3d 488, 882 N.E.2d 952 (Ohio App. 2008).  Specifically, the Common Pleas Court concluded that "Slough did have in his possession certain weapons and/or ordnance which were illegal for him to possess because they were functioning and capable of firing more than 31 rounds in succession without reloading. . . .  [T]his fact supported a finding that Slough conducted himself in a manner unbecoming an officer."  *Id.* at 492.

Plaintiff filed this complaint for damages and injunctive relief on October 25, 2006.  (Doc. 1).  Proceedings in this action were stayed pending the resolution of Plaintiff's state court appeals.  (Doc. 15).  Plaintiff's second amended complaint was filed on March 6, 2009.  (Doc. 37).  Defendants filed the instant motion for judgment on the pleadings on May 20, 2009.  (Doc. 48).  Plaintiff filed his opposition on June 4, 2009.  (Doc. 49).  Defendants replied on June 23, 2009.  (Doc. 52).

## II.    STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. Rule 12(c) may be granted under the same circumstances as a motion for failure to state a claim under Rule 12(b)(6). *United Food & Commer. Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir. 2004)**.**

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss.  *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007)).  Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.  *Twombly*, 127 S.Ct. at 1965 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action").  A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to

relief.'  Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (*citing Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir 2008).  The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

III.  **DISCUSSION**

   A.   **Count I – Deprivation of Rights**

Plaintiff asserts civil rights deprivations in violation of 42 U.S.C. § 1983.  (Doc. 37 at ¶¶ 40a-49).  Specifically, Plaintiff asserts claims against Defendants, in both official and individual capacities, for wrongful entry into Plaintiff's home, wrongful seizure of Plaintiff's property, wrongful termination, wrongful initiation of criminal actions, and for preventing Plaintiff from returning to his home or having contact with his children.  (*Id.*).  Defendants argue that Plaintiff has failed to allege an official policy of civil rights deprivations to allow claims against Defendants in their official capacities.  (Doc. 48 at 11-12).  Defendants further argue that Defendants' actions were objectively reasonable and Defendants are thus shielded from suit by qualified immunity.  (*Id.* at 12-15).

42 U.S.C. § 1983 provides a cause of action for deprivations of federal statutory or constitutional rights by persons acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)).  Where the

7

defendants are state or local police officers acting as police officers, they are presumed to be acting "under color" of state law, even where their actions violate or are unauthorized by state law. *Monroe v. Pape*, 365 U.S. 167, 180 (1961) (overruled on other grounds by, *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978)); *see also U.S. v. Classic*, 313 U.S. 299, 326 (1961) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."). In the instant case, it is clear that the Defendant police officers were acting as police officers under the color of state law.

### 1. Official Capacity Claims

A claim against a municipal official in his official capacity is considered a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Because there is no *respondeat superior* liability under § 1983, to establish an official capacity claim a plaintiff must show that the enforcement of the official entity's policy or custom caused the violation of the plaintiff's federal or constitutional right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989).

Official capacity liability may be based on a single decision of a person with "final policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). Plaintiff asserts that the actions taken against him were pursuant to the customs and within the command structure of the Lucas County Sheriff's Office. (Doc. 37 at ¶ 42). Defendant Telb, the county sheriff, is the ultimate policymaker within the Lucas County Sheriff's Office. (Doc. 37 at ¶ 4; Doc. 48 at 10 (citing Ohio Rev. Code Ann.

8

Chapter 311)).  Plaintiff alleges that Defendant Telb personally made decisions in violation of Plaintiff's civil rights.  (Doc. 37 at ¶¶ 27-29).  At this juncture, these allegations clear the initial "official policy" hurdle for official capacity claims against Defendant Telb, but not for any other defendant.  Plaintiff has sufficiently alleged claims against Defendant Telb in his official capacity in all cases where Plaintiff has sufficiently alleged an actual deprivation of a federal or constitutional right.  The following claims against Defendant Telb in his official capacity must survive this motion for judgment on the pleadings:  (1) wrongful search and seizure of Plaintiff's property; and (2) interference with Plaintiff's family relationships.  *See* Parts III.A.2.b and III.A.2.e, *infra*.

### 2.    Individual Capacity Claims – Qualified Immunity

Defendants assert the affirmative defense of qualified immunity with respect to all of Plaintiff's § 1983 claims.  (Doc. 48 at 12-15).  Qualified immunity is an immunity from suit, not merely a defense to liability.  *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  To determine whether a defendant is entitled to qualified immunity, the Court looks to the function performed by the actor, not the identity of the actor. *Kalina v. Fletcher*, 552 U.S. 118, 127 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *Higgason v. Stephens*, 288 F.3d 868, 877-78 (6th Cir. 2002); *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000) (en banc).

Qualified immunity protects public officials from suit for civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007); *Siblerstein v. City of Dayton*, 440 F.3d

306, 311 (6th Cir. 2006).  It is no longer necessary to first determine whether a constitutional right was violated before  determining whether that right was clearly established, although such an approach may be utilized in the Court's discretion in light of the circumstances of the individual case.  *Pearson*, 129 S.Ct. at 818 (overturning the rigid two-part test in *Saucier v. Katz*, 533 U.S. 194 (2001)).  The plaintiff has the burden of showing that a right is clearly established.  *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004); *Toms*, 338 F.3d at 525.  The defendants have the burden of establishing that their actions were objectively reasonable.  *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 220 (6th Cir. 2004).

A defendant is only entitled to qualified immunity if her actions were objectively reasonable; the subjective good faith of the defendant is irrelevant.  *Wilson v. Layne*, 526 U.S. 603, 614 (1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982); *Barton v. Norrod*, 106 F.3d 1289, 1293 (6th Cir. 1997).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ciminillo v. Streicher*, 434 F.3d 461, 468 (6th Cir. 2006).  Immunity will attach "if offic[ials] of reasonable competence could disagree" on whether the conduct violated plaintiff's rights.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *accord Gean v. Hattaway*, 330 F.3d 758, 767 (6th Cir. 2003); *Watkins v. City of Southfield*, 221 F.3d 883, 889 (6th Cir. 2000).  If "their decision is reasonable, [but] mistaken," immunity will attach.  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991); *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003); *Pray v. Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229 (quoting *Malley*, 475 U.S. at 341); *accord Bouggess v. Mattingly*, 482 F.3d 886, 894 (6th Cir. 2007); *Toms*, 338 F.3d at 524.

10

To be a violation of a "clearly established right," the exact conduct at issue need not have been previously held illegal; it is enough that the right be sufficiently established so as to put a reasonable official on notice that his actions are a violation of that right. *See Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002); *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir. 2005) ("Officials can still be on notice that their conduct violates clearly established law even in novel circumstances."); *Scicluna v. Wells*, 345 F.3d 441, 446 (6th Cir. 2003); *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002).

As an analysis of qualified immunity defense is highly particularized, the Court will analyze each type of claim made by Plaintiff in turn. The Court will analyze Defendants' qualified immunity with respect to the following claims, in the order alleged in Plaintiff's second amended complaint (Doc. 37, ¶¶ 43-47): (1) wrongful entry into Plaintiff's home; (2) wrongful seizure of Plaintiff's property; (3) wrongful termination; (4) wrongful initiation of criminal actions; (5) wrongful interference with Plaintiff's family interactions.

### a.      Wrongful Entry into Plaintiff's Home

It is clearly established that a "warrantless search [or entry] by the police is invalid unless it falls within one of the narrow well-delineated exceptions to the warrant requirement." *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999). Such an exception is found when consent to enter and search is given by a co-occupant if that person has joint access and control over the premises for most purposes. *United States v. Matlock*, 415 U.S. 177 (1974). An exception is also found where the police reasonably believe the person providing consent has authority to do so. *Illinois v. Rodriguez*, 497 U.S. 177 (1990). This right and exception have been so clearly established that an

11

objectively reasonable officer would know that warrantless entry is prohibited without the consent of one with authority over the premises.

When Defendants Rogers, McBroom, Luna, Walentowski and Gzechowiak entered Plaintiff's residence, Plaintiff's wife, Julie Slough, was present and Plaintiff was not.  (Doc. 37 at ¶¶ 24-25).  Mrs. Slough had actual authority to admit the police into her home.  If Mrs. Slough gave consent to the entry, Plaintiff's claim for wrongful entry fails.  There is no indication that Mrs. Slough objected to the police entry into her home.  (*See*, Doc. 37 and attached Aff. of Julie Slough).  Plaintiff does not allege or deny that Mrs. Slough refused her consent to the officers' entry.  Defendants argue that they reasonably believed Mrs. Slough gave consent (Doc. 52 at 4), and Plaintiff does not rebut this assertion.  No clearly established constitutional right was violated by Defendants entry into Plaintiff's home.  Defendants are entitled to qualified immunity in entering Plaintiff's home.

### b.  Wrongful Seizure of Plaintiff's Property

Plaintiff claims that Defendants wrongfully seized Plaintiff's property.  (Doc. 37 ¶ 44). Defendants argue that Plaintiff voluntarily gave up control of the weapons when he delivered to Defendants the key to the safe.  Additionally, Defendants argue that the weapons were seized out of "concern for the safety of the persons in the home after an informal interview with [Plaintiff] and his wife over domestic issues."  (Doc. 48 at 15 (quoting *Slough v. Lucas County Sheriff*, 174 Ohio App. 3d 488, 2008 Ohio 243 at ¶ 8)).  Defendants assert that, while hindsight would indicate the need for a warrant before seizing Plaintiff's property, at the time of the seizure the Defendants were acting to protect potential victims and believed they were doing so at the request of Plaintiff's wife.  However, Plaintiff's allegations, if proved, establish the violation of a clearly

12

established constitutional right, such that a reasonable officer would have known their conduct violated that right.

"The Fourth Amendment guarantees 'the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.'" *Whren v. United States* 517 U.S. 806, 809 (1996).  A warrantless search and seizure is presumed to be unreasonable, and "invalid unless it falls within one of the narrow well-delineated exceptions to the warrant requirement." *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999).

A warrantless search and seizure does not violate constitutional rights where the individual has voluntarily consented to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).  A warrantless entry and search may be justified on the basis of "exigent circumstances" if the officers can demonstrate: (1) a need for immediate action that would have been defeated if the officers had taken time to secure a warrant; (2) a sufficiently important governmental interest being served by the warrantless search; and (3) that weighing the governmental interest against the individual's interest in the privacy of his home, the individual's conduct somehow diminished that right.  *United States v. Rohrig*, 98 F.3d 1506, 1518 (6th Cir. 1996).  Exigent circumstances fall under one of four general categories: (1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) prevention of a suspect's escape; and (4) a risk of danger to the police or others. *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994).  To justify a warrantless search and seizure based on exigent circumstances where the safety of others is in jeopardy, the threat must be "immediate."  *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 1994) ("critical incident" involving barricaded gunman did not justify search of suspect's home where threat to

officers not immediate, rifle was not pointed at anyone nor were there verbal threats to use the gun).

Defendants assertions of Plaintiff's voluntary relinquishment of access are ill-founded. Plaintiff did not consent to a search or seizure of his gun safe.  When Plaintiff delivered the keys to Defendants, he made explicit that it was his intent to prevent himself access to the weapons, not to give such access to the Defendants.  Plaintiff did not voluntarily grant permission to the police officers to search his safe or seize his property.

Additionally, the Defendants cannot claim the exception of exigent circumstances.  The Defendants' assertions of concern for the Plaintiff's family are unreasonable.  When Plaintiff gave up his own access to the weapons, there ceased to be any possibility that Plaintiff might use the weapons to harm his family.  Any concerns the police may have had for the potential victims with regard to the weapons should have been allayed at that time.  There were no exigent circumstances to justify a warrantless search and seizure of Plaintiff's weapons safe, and a reasonable officer would have known that such a course of action violated Plaintiff's clearly established constitutional rights.

At this juncture, Plaintiff has alleged enough to establish that Defendants' search and seizure of Plaintiff's weapons safe was, on its face, unreasonable, and a violation of Plaintiff's Fourth Amendment right to be secure in his possessions.  Defendants Roger, McBroom, Luna, Walentowski, and Grzechowiak cannot claim qualified immunity with respect to the search and seizure of Plaintiff's weapons collection.

### c.       Wrongful Termination

14

Plaintiff claims that the termination of his employment, without being convicted of a crime, was a violation of his constitutional or federal statutory rights.  (Doc. 37 at ¶ 45). Defendants argue that Plaintiff was lawfully terminated from his employment, despite the wrongful search and seizure of Plaintiff's property.  (Doc. 48 at 16).  Defendants base their argument on a prior case, litigated in state court, regarding Plaintiff's termination.  *Slough v. Lucas County Sheriff*, 174 Ohio App. 3d, 882 N.E.2d 952 (2008).  The state appellate court found that Plaintiff had been correctly terminated from his employment on the basis of "conduct unbecoming an officer," and that the unreasonable search exclusionary rule is inapplicable to administrative hearings and civil actions.  *Id.*  Plaintiff counters that his termination, based as it was on evidence obtained during an unconstitutional search and seizure, was itself unconstitutional.  (Doc. 49 at 6-7).

Plaintiff's claims of constitutional violations in the termination of his employment are without merit.  It is true that all criminal charges against Plaintiff for possession of illegal weapons were dropped due to the exclusion of evidence obtained in a warrantless search.  However, Plaintiff was not terminated for commission of a felony, which Plaintiff had not been convicted of in criminal court.  Plaintiff was terminated for "conduct unbecoming an employee."  The state appellate court found this to be a sufficient, independent basis for termination, regardless of how such unbecoming conduct was discovered.  *Slough*, 882 N.E.2d at 958-60.  The constitutional injury occurred when Plaintiff's weapons were seized, not when he was terminated for having illegal weapons, conduct unbecoming an employee of the Sheriff's Office.  As there was no violation of Plaintiff's constitutional or federal statutory rights in terminating Plaintiff's employment, Plaintiff's claims regarding termination must be dismissed.

15

Plaintiff's alternative argument, that the unconstitutional search and seizure was the proximate cause of Plaintiff's termination, does not hold water.  The proximate cause of Plaintiff's termination was Plaintiff's possession of unlawful ordnance, not the means by which Defendants made their discovery of that ordnance.  *See*, *id.*  Plaintiff would still have been terminated had the discovery been made through constitutional means, and, vice versa, Plaintiff would not have been terminated due to the unconstitutional seizure had Plaintiff not had any unlawful ordnance in his collection.  Plaintiff's alleged injury, termination from his job, was not proximately caused by Defendants' violations of Plaintiff's rights.

### d. Wrongful Initiation of Criminal Actions

Plaintiff claims violations of § 1983 for wrongful pursuit and initiation of criminal actions against Plaintiff.  (Doc. 37 at ¶ 46).  The Sixth Circuit recognizes a § 1983 claim for malicious prosecution, but its contours are uncertain.  *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).  It is certain, however, that a § 1983 claim for malicious prosecution fails when there was probable cause to prosecute.  *Id.*  Though the evidence obtained in the unconstitutional search and seizure was rightly excluded from consideration at the criminal proceeding, the Defendants did, in fact, find in Plaintiff's collection weapons with magazines capable of holding more rounds than is lawful.  At the very least, probable cause to prosecute existed when that discovery was made.  As Defendants had probable cause to initiate criminal proceedings, even though the evidence was later excluded as constitutionally defective, Defendants did not violate Plaintiff's constitutional rights in initiating criminal proceedings.

### e. Wrongful interference with Plaintiff's Family Relations

16

Plaintiff claims that Defendants violated his federal and constitutional rights by wrongfully preventing him from returning to his home or having contact with his children. (Doc. 37 at ¶ 47). Defendants argue that Defendants had a duty to investigate Plaintiff's alleged wrongdoing, *see Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989), and that these actions were taken in the course of that investigation, and thus render Defendants immune from suit.

The freedom of family relationships is a liberty interest protected by the Constitution. *See*, *e.g.*, *Santosky v. Kramer*, 455 U.S. 745 (1982) (due process requires clear and convincing evidence to irrevocably sever the rights of natural parents to associate with their children); *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494 (1977) (statute limiting family members that can live together violates due process); *Stanley v. Illinois*, 405 U.S. 645 (1972) (due process requires hearing on fitness of unwed natural father before children taken from him after death of natural mother); *Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923) (family relationships are included in "liberty" interest protected by Fourteenth Amendment).

That freedom of intimate association is protected as "a fundamental element of personal liberty" is a matter of clearly established constitutional law. *Roberts v. United States Jaycees*, 468 U.S. 609, 618; *see also Williams v. Pollard*, 44 F.3d 433, 434-35 (6th Cir. 1995) (citing *Hooks v. Hooks*, 771 F.2d 935, 941 (6th Cir. 1985)). Though this freedom is not without limitation, qualified immunity is predicated on the objective reasonableness of the defendants' actions with respect to that freedom in light of all of the circumstances. *Williams*, 44 F.3d at 435.

It is true that, once allegations of domestic violence and child abuse have been made, the Defendants had a duty to investigate. *See Leach*, 891 F.2d at 1248. Requiring Plaintiff to refrain from seeing his children for an unspecified time period, while the investigation was ongoing, is

17

objectively reasonable in light of allegations of child abuse and domestic violence. Most of the Defendants involved are thus shielded from suit by qualified immunity.

However, Plaintiff's allegations go beyond the simple requirement to refrain from contacting his children or returning home while the investigation was pending. Plaintiff alleges that the investigation was initiated through a series of false accusations on the part of Defendant Ellis, and coercive tactics on the part of Defendant Luna to elicit false testimony from Plaintiff's wife. Plaintiff's allegations of falsification of evidence are supported by the affidavit of Julie Slough, Plaintiff's wife, who states that she was pressured by Defendant Luna to "[inflate] disagreements I had with my husband." (Aff. of Julie Slough at ¶ 12). Such actions on the part of Defendants Ellis and Luna are not objectively reasonable by any interpretation.

Additionally, Defendant Telb allegedly refused to return Plaintiff's weapons collection, including those lawful for Plaintiff to possess, "to see if Julie and Plaintiff were going to get a divorce." (Doc. 37 at ¶ 26). This alleged behavior and intent are objectively unreasonable infringements on Plaintiff's liberty interest of family association.

Defendants Ellis, Luna, and Telb are not protected by qualified immunity and are subject to liability in their individual capacities for the violations of Plaintiff's right to family and intimate association. All other defendants involved, who prevented Plaintiff from seeing his family in the course of the investigation, are entitled to qualified immunity and are shielded from individual liability.

### 3. Damages

Defendants argue that Plaintiff's § 1983 claims must be dismissed as Plaintiff has not alleged any actual injury. (Doc. 48 at 15-16). Defendants assertions are only applicable to the

question of special compensatory damages. Defendants fail to take into consideration the myriad options for relief available to plaintiffs in § 1983 suits.

Relief may take many forms. Compensatory damages may be awarded for specific monetary losses such as lost wages, lost earning capacity, medical expenses, as well as for injuries not quantifiable such as pain and suffering, emotional distress, and so on. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation, personal humiliation, and mental anguish and suffering.'"). Nominal damages may be awarded even in the absence of proven actual injury. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n. 11 (1986) ("[N]ominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury."); *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978); *Sutton v. Board of Education*, 958 F.2d 1339, 1352 (6th Cir. 1992). Punitive damages may be awarded against an official in her individual capacity where that official acted with malicious intent or callous disregard of a plaintiff's constitutional rights. *Smith v. Wade*, 461 U.S. 30 (1983). Punitive damages are not dependant on an award of compensatory damages, and thus may be awarded even in the absence of actual injury. *Walker v. Bain*, 257 F.3d 660 (6th Cir. 2001), *cert. denied*, 535 U.S. 1095 (2002). The question of punitive damages is a question for the jury if there is "sufficient evidence of conduct by the defendant . . . which, if believed by the jury, would support a finding of callous indifference to the plaintiff's [constitutional] rights." *Burkhart v. Randles*, 764 F.2d 1196, 1202 (6th Cir. 1985). Finally, the whole panoply of equitable relief is available to § 1983 plaintiffs. 42 U.S.C. § 1983 (authorizing relief in a "suit at equity").

19

Compensatory damages are dependent on an actual injury.  *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 603 (6th Cir. 2006).  Defendants are correct in their assertion that the abstract value of a constitutional right is not a sufficient basis for awarding compensatory damages.  *Turner v. Bolden*, 8 Fed. Appx. 453, 455 (6th Cir. 2001).  Defendants are correct in their claim that an indictment is not a compensable injury.  *Schiling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995). Defendants are also correct in stating that Plaintiff cannot recover lost wages for the justified termination of Plaintiff's employment.  However, lost wages and indictment are not the only injuries Plaintiff has alleged.  Plaintiff alleges the actual injury of having his property seized. Plaintiff alleges the actual injury of impaired relationship with his family.  Plaintiff alleges the actual injury of humiliation and loss of reputation.  The value of these injuries are questions for the finder of fact and inappropriate for adjudication at this stage.  Compensatory damages would be appropriate for these injuries if proven.

If no actual injury can be sufficiently proven on the evidence that arises, Plaintiff may still recover nominal damages.  Nominal damages, though not of great monetary value, are a formal recognition that Plaintiff has been wronged.

Punitive damages may be awarded against Defendants in their personal capacity if Plaintiff can show that Defendants exhibited malicious intent or callous disregard of Plaintiff's rights. Plaintiff has alleged that Defendant Ellis deliberately fabricated domestic violence and child abuse claims against Plaintiff.  Plaintiff has also alleged that Defendant Luna manipulated Plaintiff's wife into believing Plaintiff was unfaithful, coerced Plaintiff's wife into severely exaggerating disagreements the couple had, and threatened Plaintiff's wife with the loss of her children should she not cooperate.  Plaintiff has certainly made sufficient allegations which, if proven, could

20

support a finding of malicious intent on the part of Defendants Ellis and Luna.  Punitive damages might be appropriate should these allegations be proven.  There is insufficient evidence as yet to make a finding of malicious intent or callous disregard on the part of the other named defendants, though such evidence may very well appear during the discovery process.

Plaintiff has also asked for equitable relief.  Reinstatement of Plaintiff's employment is not appropriate where Plaintiff's termination was justified.  But Plaintiff has also asked for the issuance of a press release on the judgment of this Court.  Such a press release would be beneficial to Plaintiff to help restore his reputation and repair his bruised ego.  Whether such a remedy is appropriate depends on the appropriateness of damages.  If Plaintiff's injuries can be repaired through compensatory and other damages, such an injunction would likely not be appropriate.  However, the issue of appropriate relief need not be decided at this stage.

Plaintiff has asked for numerous remedies appropriate to his claims.  Defendants argument that the § 1983 claims must be dismissed for want of alleged actual injury is legally unsound and factually untrue.  Plaintiff may seek compensatory damages for the actual injuries of seizure of his property, loss of liberty in family relationships, and for humiliation, loss of reputation, and mental distress caused by the violations of Plaintiff's constitutional rights.  Plaintiff may seek nominal damages in recognition of his rights violated.  Plaintiff may seek punitive damages against at least Defendants Ellis and Luna, and likely against the other Defendants in their individual capacities.  Plaintiff may also seek the equitable relief of a press release.  Plaintiff's claims will not be dismissed for want of an "actual injury."

**4.      42 U.S.C. § 1983 Claims – Summary**

Plaintiff has sufficiently alleged official capacity § 1983 claims against Defendant Telb, Lucas County Sheriff, in the following two areas: (1) wrongful search and seizure of Plaintiff's property; and (2) interference with Plaintiff's family relationships.

Plaintiff has sufficiently stated personal capacity § 1983 claims, for which the following Defendants are not entitled to qualified immunity in following two areas: (1) wrongful search and seizure of Plaintiff's weapons collection, as against Defendants Roger, McBroom, Luna, Walentowski, and Grzechowiak; and, (2) wrongful interference with Plaintiff's family relationships, as against Defendants Ellis, Luna, and Telb.  With the exceptions enumerated in this paragraph, Defendants are shielded from suit in their individual capacities by qualified immunity.

### B.        Count II – Negligent Training and Supervising

Plaintiff asserts a claim for negligent training and supervising based on 42 U.S.C. § 1986. (Doc. 37 at ¶¶ 50-61) against some of the Defendants.  Those Defendants argue that Plaintiff's § 1986 claim is barred because it is predicated on the violation of § 1985, under which section Plaintiff has failed to state a claim on which relief can be granted.  (Doc. 48 at 19).

Section 1986 provides a cause of action against persons "who, having knowledge that any of the wrongs conspired to be done, and mentioned in [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed."  42 U.S.C. § 1986.  A § 1986 claim is derivative of, and predicated on the violation of, § 1985; as such, a § 1986 violation cannot be established unless a § 1985 violation has first been established.  *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).

22

Plaintiff cannot establish a violation of 42 U.S.C. § 1986, as Plaintiff has failed to sufficiently state a claim for violation of 42 U.S.C. § 1985.  *See* Part III.C , *infra.*  Plaintiff's Count II, negligent training and supervising, is dismissed with prejudice.

### C.        Count III – Conspiracy to Interfere with Civil Rights

Plaintiff asserts a claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985.  Defendants argue that Plaintiff does not allege any of the required elements of a conspiracy or class-based motivation to deprive Plaintiff of any civil rights as required by § 1985.  (Doc. 48 at 17).  Defendants also argue that Plaintiff's conspiracy claims are barred by the intracorporate doctrine.  (*Id.* at 18).  Plaintiff replies that the conspiracy claims should be allowed to go forward because of the alleged involvement of unnamed ATF agents in the conspiracy.  (Doc. 49 at 9).

Four causes of action arise under 42 U.S.C. § 1985.  Section 1985(1) creates a cause of action for conspiracies to interfere with federal officers in the performance of their duties.  The first clause of §1983(2) creates a cause of action for conspiracy to influence parties, witnesses, or jurors in federal court proceedings.  The second clause of § 1985(2) creates a cause of action for conspiracy to interfere with due process in state courts with the intent to deprive a person of his equal protection rights.  Section 1985(3) creates a cause of action for conspiracy to deprive "either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws."  Additionally, to prevail in a claim under the second clause of § 1985(2) or under § 1985(3), a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Kush v. Ruteledge*, 460 U.S. 719, 726 (1983) (quoting *Griffen v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).

Plaintiff has not stated a sufficient claim under 42 U.S.C. § 1985. Plaintiff's claims clearly do not fall under § 1985(1) or § 1985(2). Plaintiff has not sufficiently stated a claim under § 1985(3) because he does not allege any class based animus motivating the alleged conspirators' actions. There is no need to address Defendants contention that a conspiracy claim is barred by the intracorporate doctrine, because the Court finds Plaintiff has failed to allege a required element of a § 1985(3) claim.

Count III, conspiracy to interfere with civil rights, is dismissed.

### D. Count IV -- Defamation

Plaintiff asserts the state tort claim of defamation. (Doc. 37 at ¶¶ 66-70). The statute of limitations for a defamation action in Ohio is one year. Ohio Rev. Code § 2305.11(A). Under Ohio law, the statute of limitations begins to run on the date the defamatory remarks are spoken or published, not on the date a Plaintiff learns of the remarks. *Lewis v. Del. County JVSD*, 161 Ohio App.3d 71, 829 N.E.2d 697 (2005); *Glass v. Glass* 2003 Ohio App. LEXIS 3995 (2003); *Lyons v. Farmers Ins. Group of Companies*, 67 Ohio App.3d 448, 587 N.E.2d 362 (1990); *Rainey v. Shaffer*, 8 Ohio App.3d 262, 456 N.E.2d 1328 (1983).

The original complaint was filed on October 25, 2006. (Doc. 1). Every allegation of spoken or written remarks about the Plaintiff were uttered prior to October 25, 2005. (*Id.*). Plaintiff's argument that perhaps the state courts would be amenable to the introduction of a discovery rule under these facts is impertinent. (*See* Doc. 49 at 9). The Court will not speculate about what the state courts might or might not decide on an issue of state law, especially as precedent on this point of law is so very clear. Count IV is dismissed as barred by the statute of limitations.

24

E.       **Count V – Conversion and Intermeddling**

Plaintiff asserts the state law claim of conversion and intermeddling[2] based on allegations

that Defendants wrongfully seized, and subsequently refused to relinquish, Plaintiff's weapons

collection.  (Doc. 37 at ¶¶ 71-78).  Defendants argue that the seizure of the weapons was not

wrongful because the weapons were seized in the context of a domestic violence investigation,

because Plaintiff voluntarily gave up control of the weapons, and because the Defendants believed

that they were removing the weapons at the request of Plaintiff's wife.  (Doc. 48 at 21-23).

Additionally, Defendants argue that Plaintiff has not suffered any damages as Defendants, after

court order for replevin, have returned to Plaintiff all but two weapons with magazines which were

kept under investigation and subsequently found to be unlawful.  (*Id.* at 23).  No damage to the

weapons returned is alleged.  Defendants argue that the lack of physical damages relieves

Defendants from liability for conversion.  (*Id.*).

Under Ohio law, a conversion is any exercise of dominion or control wrongfully exerted

over the personal property of another in denial of or under a claim inconsistent with the owner's

rights.  *Allan Nott Ents, Inc. v. Nicholas Starr Auto, L.L.C.*, 110 Ohio St. 3d 112, 851 N.E.2d 479

(2006); *Toma v. Corrigan*, 92 Ohio St. 3d 589, 752 N.E.2d 281 (2001); *Kraft Constr. Co. v.*

*Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio App. 3d 33, 713 N.E.2d 1075 (1998); *Cruz v. South*

*Dayton Urological Associates, Inc.*, 121 Ohio App. 3d 655, 700 N.E.2d 675 (1997).

However, Plaintiff has already prevailed in a suit against Defendants for replevin in state

court.  (Doc. 37 at ¶¶ 29, 32; Ex. E).  Replevin, as a statutory remedy, is preferable to the common

law remedy of conversion.  Ohio Rev. Code Chapter 2737.  The successful party in a replevin

---

[2] Intermeddling is not recognized as an independent cause of action under Ohio or Federal law.  The Court treats
Plaintiff's claim for "conversion and intermeddling" as a claim for conversion.

action has the option of taking the property *in specie* or recovering the monetary value of the property at the time of dispossession.  Ohio Rev. Code §§ 2373.10, 2737.11.  If the property is of a nature that it cannot be returned, the claim may continue as a claim for conversion.  Ohio Rev. Code § 2737.14.

The successful party in a replevin action does not recover both the property *in specie* and the value of the property, but only one or the other.  In this case, Plaintiff elected to receive back the wrongfully taken property.  (Doc. 37 at ¶¶ 32, 74).  Plaintiff cannot now make a claim of conversion for property which has been returned, in like condition as they were when taken.  The remedies of replevin and conversion are mutually exclusive.  Plaintiff has no claim of conversion where the property at issue has been returned subsequent to a judgment for replevin.

A careful reading of the complaint shows that Plaintiff is not claiming conversion of the two weapons which are still not in his possession.  (Doc. 37 at ¶¶ 71-78).  Even were Plaintiff to claim conversion damages for the items not returned to Plaintiff, it is not clear from the complaint whether Plaintiff had a right to posses such items in the first place.  The two weapons with magazines were held subject to an investigation into the legality of the weapons.  (Doc. 37 at ¶¶ 31-32).  Though Plaintiff disputes who had possession of the weapons during the investigation, it is clear that criminal charges were brought against Plaintiff predicated on those weapons.  (Doc. 37 at ¶ 33).  It is true that Plaintiff was never convicted of possession of illegal weapons.  *Ronald Slough v. Lucas County Sheriff*, 174 Ohio App. 3d 488; 882 N.E.2d 952 at ¶ 3.  This does not mean, however, that the weapons were in fact lawful to possess.  *Id.* at ¶ 9.  The common pleas court found that the weapons were in fact unlawful, *Id.*, and Plaintiff does not allege otherwise.

As Plaintiff had no right of possession in the two weapons retained by the Sheriff's Department, Plaintiff has no claim of conversion respecting those items.

Plaintiff's Count V, for conversion and intermeddling is dismissed.

### F.    Count VI – Malicious Prosecution

Plaintiff asserts the state tort claim of malicious prosecution.  (Doc. 37 at ¶¶ 79-80).  The statute of limitations for a malicious prosecution action in Ohio is one year, which begins to run on the date of journalization of a judgment in favor of the now-plaintiff.  Ohio Rev. Code § 2305.11(A); *Levering v. National Bank*, 87 Ohio St. 117, 100 N.E. 322 (1912); *Ricketts v. Hahn*, 72 Ohio App. 478, 53 N.E.2d 202 (1943).

The dismissal of criminal charges against Plaintiff was journalized June 20, 2005.  (Doc. 48 at 24 n. 12).  Plaintiff filed his original complaint more than one year later on October 25, 2006.  (Doc. 1).  Count VI is dismissed as barred by the statute of limitations.

### G.    Count VII – 14th Amendment Violation by way of 2nd Amendment

Plaintiff asserts a claim of Second Amendment violation in seizing Plaintiff's weapons collection, and Fourteenth Amendment violation in acting on that seizure to terminate Plaintiff's employment.  (Doc. 37 at ¶¶ 81 – 83).

42 U.S.C. § 1983 is the exclusive vehicle by which a plaintiff can seek redress for alleged Constitutional violations unless another remedy is provided by statute.  *Jett v. Dallas Indep. Sch. Dist.* 491 U.S. 701, 735 (1989).  The Court therefore treats this count as a separate § 1983 claim.

The Second Amendment confers an individual right to bear arms.  *District of Columbia v. Heller*, 128 S. Ct. 2783, 2799 and 2816-17 (2008).  However, the United States Supreme Court has never held that the Second Amendment is enforceable against the states by incorporation into

the Due Process Clause of the Fourteenth Amendment.  *Heller* at 2813 n. 23; *see generally*, 1 Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 3.03[B][5][e] (4th ed. 2008 cumulative supplement).  Courts in other circuits have held that Second Amendment rights are not enforceable against the states under § 1983.  *E.g. Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999); *Love v. Peppersack*, 47 F.3d 120 (4th Cir. 1995), *cert. denied*, 516 U.S. 813 (1995); *Nollet v. Justices of Trial Court*, 83 F. Supp. 2d 204, 214 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2001).  *But c.f.*, *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir., 2007) (holding that the Second Amendment is enforceable in § 1983 against the District of Columbia), *cert. denied*, 128 S.Ct. 2994 (2008).  As the weight of authority holds that the individual right to bear arms may not be enforceable against the states, the constitutional right to do so is anything but clearly established.  Defendants, in their individual capacities, are entitled to immunity from suit for damages.

Plaintiff argues that the Defendants are still subject to suit for injunctive relief.  It is not clear what form of injunctive relief could be requested, as Defendants have already returned all of Plaintiff's weapons that are lawful for him to possess.  There is no further injunctive relief the Court could grant.

As Petitioner's claim of wrongful termination in reliance on the seized weapons has been dealt with *supra*, Part III.A.2.c, the Court need not address this aspect of Plaintiff's claim.

Count VII is dismissed with prejudice.

**H.      Dismissal of Extra Defendants**

Plaintiff has failed to allege sufficient claims with respect to Defendants Atkinson and Perry, and Defendant Board of Lucas County Commissioners.  These Defendants are dismissed as parties in this action.

### 1.    Defendant Lt. Atkinson

Plaintiff names Lt. Atkinson as a defendant, but only refers to Lt. Atkinson once as a witness to another defendant's statement.  (Doc. 31 at ¶¶ 5, 26).  Plaintiff does not allege any facts to indicate that Lt. Atkinson was personally or officially involved in any of the alleged violations of Plaintiff's Constitutional rights. The Court, *sua sponte*, dismisses Lt. Atkinson as a defendant in this case.

### 2.    Defendant Ken Perry

Plaintiff names Ken Perry as a defendant.  Ken Perry is alleged to have presided at the meeting where Plaintiff was terminated.  Ken Perry is not alleged to have participated in any of the other conduct for which rights violations are claimed.  As Plaintiff's federal and constitutional rights were not violated by the termination, *see* Part III.A.2.C, *supra*, the Court dismisses Ken Perry as a Defendant.

### 3.    Defendant Board of Lucas County Commissioners

Defendants argue that the § 1983 claims against the Lucas County Board of Commissioners are without merit, as the Board of Commissioners has no statutory authority to direct or supervise the actions of the employees of the County Sheriff's Department.  (Doc. 48 at 9-10).  Plaintiff replies that Defendant Telb has claimed that the ultimate policymaker in the Sheriff's department is not the Sheriff, but that he is subject to the Board of Commissioners.  (Doc. 49 at 7).

A board of county commissioners has only the authority expressly conferred by statute or necessarily implied by statute. *Rees v. Olmsted*, 135 F. 296, 299 (6th Cir. 1905); *State ex rel. Shriver v. Board of Commissioners*, 148 Ohio St. 277, 74 N.E.2d 248 (1947); *State ex rel. A. Bently & Sons Co. v. Pierce*, 96 Ohio St. 44, 117 N.E. 6 (1917).  Powers explicitly granted to the board are to be strictly construed. *Commissioners v. Andrews*, 18 Ohio St. 49 (1868); *Treadwell v. Commissioners*, 11 Ohio St. 183 (1860).

Ohio law does not, expressly or impliedly, grant to a county board of commissioners supervisory powers over the activities of the county sheriff's department.  This authority lies exclusively with the county sheriff.  Ohio Rev. Code Ann. Chapter 311.  Therefore, a board of county commissioners has no liability for the actions of such employees absent a showing that the board assumed supervisory or policymaking control over the sheriff's department in violation of statute. *See Ridgeway v. Union County Commissioners*, 775 F. Supp. 1105, 1109-10 (S.D. Ohio 1991).

Plaintiff has made no allegations of supervisory control or policymaking by the Board that directly led to the Constitutional violations alleged in the second amended complaint.  (*See* Doc. 37).  As the Defendant Board had no duty to Plaintiff to regulate the internal activities of the Sheriff's Department, Plaintiff has not stated a claim for relief against Defendant Board.  Plaintiff's claims against Defendant Board are dismissed with prejudice pursuant to Rule 12(c).

## IV.   CONCLUSION

Thus, and in sum, Defendants motion for judgment on the pleadings is hereby granted in part and denied in part.  (Doc. 48).  Counts II-VII are dismissed with prejudice.  Litigation with respect to Count I will proceed as to the following claims: (1) unreasonable seizure of Plaintiff's

property as against Defendant Telb in his official capacity, and Defendants Luna, Roger,

McBroom, Walentowski, and Grzechowiak in their individual capacities; (2) wrongful

interference with Plaintiff's family relationships as against Defendant Telb in his official capacity,

and Defendants Luna and Ellis in their individual capacities.  All other claims alleged in

conjunction with Count I are dismissed with prejudice.  Defendants Atkinson and Perry, and

Defendant Board are dismissed as parties to this action.

   IT IS SO ORDERED.

           _s/ David A. Katz_____
          DAVID A. KATZ
          U. S. DISTRICT JUDGE