IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

RONALD P. SLOUGH,

        Plaintiff,      Case No. 3:06 CV 2592

  -vs-

                  MEMORANDUM OPINION

JAMES A. TELB, Sheriff, et al.,

        Defendant.

KATZ, J.

   This matter is before the Court on the motion (Doc. 65) for partial summary judgment filed by Plaintiff, Ronald Slough, and Defendants' response and cross-motion for summary judgment (Doc. 84). The former will be denied and the latter granted.

**I. Background**

   Although neither of the parties has seen fit to discuss the factual background of this case in their respective briefs, the Court will do so briefly. Ronald Slough was employed by the Lucas County Sheriff's Office as a deputy sheriff. In July 2004, Slough was subject to an internal investigation concerning possible domestic problems. On or about July 15, 2004, numerous weapons and ordnance were removed from the basement of Slough's home by the Lucas County Sheriff's Office as part of that investigation. The weapons were removed for "safekeeping."

   On October 18, 2004, Slough filed a complaint in replevin in state court seeking return of the weapons and ordnance. On November 22, 2004, the state court ordered the Lucas County Sheriff's Office to return all but six items belonging to Slough, which were to be retained by the Sheriff's Office pending further investigation.

   The next day, November 23, 2004, Plaintiff was indicted on two counts of unlawful possession of dangerous ordnance pursuant to Ohio Revised Code §§ 2923.17(A) and 2923.17(D).

The indictment was subsequently dismissed after the trial court granted Slough's motion to suppress the weapons as the fruits of an illegal search and seizure.

On November 30, 2004, Slough was terminated from his employment with the Lucas County Sheriff's Office. Slough appealed the decision regarding his termination. The State Personnel Review Board, the Court of Common Pleas, and the Court of Appeals of the Ohio Sixth District each upheld the termination. *Slough v. Lucas County Sheriff*, 174 Ohio App. 3d 488, 882 N.E.2d 952 (Ohio App. 2008). The Common Pleas Court concluded that "Slough did have in his possession certain weapons and/or ordnance which were illegal for him to possess because they were functioning and capable of firing more than 31 rounds in succession without reloading. . . . [T]his fact supported a finding that Slough conducted himself in a manner unbecoming an officer." *Id*. at 492.

Plaintiff filed the present action for damages and injunctive relief on October 25, 2006. (Doc.1). On March 6, 2009, Plaintiff filed a Second Amended Complaint. (Doc. 37). Defendants then moved for judgment on the pleadings as to all claims in the suit. (Doc. 48). In a memorandum opinion issued on August 14, 2009 (Doc. 53), this Court granted the motion in part, dismissing all of the claims in the suit except for Slough's claims under 42 U.S.C. § 1983 for: (1) unreasonable seizure of his property as against Defendant Telb in his official capacity, and Defendants Luna, Roger, McBroom, Walentowski, and Grzechowiak in their individual capacities; (2) wrongful interference with his family relationships as against Defendant Telb in his official capacity, and Defendants Luna and Ellis in their individual capacities.

Discovery has now been completed. Slough has now moved for partial summary judgment on the issue of the legality of the seizure of his weapons, arguing that the state court's granting of his

2

suppression motion has collateral estoppel effect in this suit. Defendants have filed a cross-motion for summary judgment, arguing that Slough's replevin action is res judicata as to all of his claims arising from the seizure, and that Slough has produced insufficient evidence, as a matter of law, to prevail on his claim for interference with family relations.

**II. Standard of Review**

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, a court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, a court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

**III. Discussion**

*A. Unlawful Seizure*

It is well-established that a state-court judgment is to be given the same res judicata effect in a subsequent § 1983 action in federal court that the judgment would have in state court. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984). This is so regardless of whether the issues in the subsequent federal suit were "actually litigated" in the prior state suit. See *id*. ("Section 1983 . . . does not override state preclusion law and guarantee [the plaintiff] a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims.").

3

Under Ohio law, the doctrine of res judicata acts to bar a claim when the following four elements are met: (1) there is a final, valid decision on the merits by a court of competent jurisdiction; (2) there is a second action that involves the same parties, or their privies, as the first action; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of a transaction or occurrence that was the subject matter of the first action. *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 123 (2006). It does not matter whether the plaintiff pursues different legal theories in the subsequent action, for "[i]t has long been the law of Ohio that an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or *might have been* litigated in a first lawsuit." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995) (emphasis in original; internal quotation marks omitted). The purpose of this rule is to " provid[e] parties with an incentive to resolve conclusively an entire controversy involving the same core of facts". *Id*. at 383.

In this case, Plaintiff's § 1983 action for the unreasonable seizure of his weapons is barred by his earlier replevin action in state court seeking recovery of the weapons. The earlier replevin action was voluntarily dismissed by Plaintiff with prejudice pursuant to a settlement agreement between the parties. But "[a] settlement agreement between parties operates as res judicata to the same extent as an adjudication on the merits," *MCM Funding v. Amware Distribution Warehouses*, 2006 WL 1780657 at *5 (Ohio App. 8 Dist. June 29, 2006), and so the first element of the res judicata test is met in this case.

As to the second element, the claims in the replevin suit were brought only against Telb, while the unlawful seizure claim in the present suit is brought against Telb as well as the several officers who carried out the seizure. To invoke res judicata, the parties in the subsequent action

4

must be identical to or in privity with the parties in the first action. Under Ohio law, "what constitutes privity in the context of res judicata is somewhat amorphous." *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 379 (2004) (internal quotation marks and formatting omitted). In this context, the Ohio courts have given the term 'privity' a "broad definition" that looks to whether the parties have "a mutuality of interest, including an identity of desired result." *Id*. (internal quotation marks omitted).

The Second Amended Complaint avers that, at the time of the seizure, "all defendants were acting in their official capacities in accordance with rules and regulations and the command structure of the [Lucas County Sheriff's Office]" (Doc. 37 at ¶ 42), and there is thus no basis in the Second Amended Complaint for distinguishing the liability of Telb from the liability of the named individual officers. See *Kirkhart*, 101 Ohio St.3d at 380 ("[W]hen a party is sued as an individual for actions taken solely in her official role, res judicata may not be circumvented.") (quoting *Lamb v. Geovjian*, 165 Vt. 375, 380 (1996)). The individual officers thus share a sufficient mutuality of interest with Telb to hold that they are in privity with him for res judicata purposes.

As to the third element, although the § 1983 issues in this suit were not "actually litigated" in the state-court replevin action, they certainly could have been. And as to the fourth element, the earlier replevin action arises from the same "transaction or occurrence" that gives rise to the § 1983 claims alleging unreasonable seizure in this suit: the July 15, 2004, raid on Slough's basement.

Therefore, Defendants' motion for summary judgment is granted as to the unlawful seizure claim.

***B. Interference with Family Relationships***

5

The Sixth Circuit has held that "mere investigation by authorities into child abuse allegations, without more," does not infringe upon a parent's constitutionally-protected right to familial association, and hence does not violate § 1983. *Kottmyer v. Maas*, 436 F.3d 684, 691 (6th Cir. 2006). But the *Kottmyer* panel indicated that liability might obtain if "the investigation was undertaken in bad faith or with a malicious motive or if tactics used to investigate would 'shock the conscience." *Id*. at 691 n. 1.

This Court, in its earlier memorandum opinion of August 14, 2009, opined that the act of "[r]equiring [Slough] to refrain from seeing his children for an unspecified time period, while the investigation was ongoing, [was] objectively reasonable in light of allegations of child abuse and domestic violence." (Doc. 53). But this Court held that the allegations in the Second Amended Complaint were sufficient to survive Defendants' motion for judgment on the pleadings as to Telb, Ellis, and Luna because Slough alleged that the investigation was initiated in bad faith, through a series of false accusations by Ellis and coercive tactics on the part of Luna in order to elicit false testimony from Slough's wife, Julie.

There is no evidence in the record at present, however, to support the former allegation. Instead, Ellis's uncontroverted deposition testimony indicates that Julie Slough told him personally of her husband's abusive behavior, and that the investigation was initiated in response to these communications.

The latter charge, that Luna used unconscionable means to elicit testimony from Slough's wife prior to the opening of the investigation, also finds insufficient factual support in the record. The sole piece of evidentiary material supporting this charge is an affidavit from Julie Slough

6

describing a meeting she had with Luna prior to initiation of the investigation (Doc. 37, Attachment 2).

After careful review, the Court finds that the conduct described in that affidavit does not rise to the level of "shocking the conscience." Instead, the affidavit details a voluntary meeting between Luna and Julie Slough at a Burger King, at which Luna attempted to obtain a statement from Julie Slough concerning the allegations against her husband. Although the affidavit alleges that Luna threatened to investigate the matter further if Julie Slough did not cooperate, and that some of the statements Luna made concerning Ronald Slough during the meeting were untrue, these allegations do not rise to the level of constitutional concern. The Court is extremely reluctant to attempt to micromanage the interactions between the police and alleged victims in domestic abuse investigations, as the threat of § 1983 liability for "interference with family relationships" might well deter officers from investigating credible domestic abuse allegations.

Therefore, summary judgment is granted in favor of Defendants on the claim for interference with family relationships.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion for partial summary judgment (Doc. 65) is denied, and Defendants' cross-motion for summary judgment (Doc. 84) is granted. The case is closed.

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

7